# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DELORIA J. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09 C 4160 |
| v. | ) | |
| | ) | Honorable William J. Hibbler |
| ERIC HOLDER, ATTORNEY GENERAL, | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deloria Johnson brings this lawsuit against her former employer, the Attorney General of the United States, alleging that she was discriminated against on the basis of her race, sex, and age while working as a Legal Assistant at the U.S. Attorney's Office for the Northern District of Illinois. Defendant has moved for summary judgment on all of Johnson's claims. For the following reasons, the Court GRANTS Defendant's Motion.

### I.  Factual Background

Deloria Johnson, and African-American female born on December 14, 1939, began her employment as a secretary in the Office of the U.S. Attorney for the Northern District of Illinois on May 13, 1991. (Def. Rule 56.1(a)(3) Statement (hereinafter "Def. St.") ¶ 3.) Her position title changed to "Legal Assistant" in 2004, but her duties remained essentially the same. (*Id.*) Johnson was stationed on the third floor, where she worked alongside several other Legal Assistants. (Def. St. ¶ 8.)

On June 11, 2007, that U.S. Attorney's Office conducted a training session for Legal Assistants on a document scanning computer program called "e Scan-IT." (Def.

St. ¶10.) Johnson attended the training along with fellow Legal Assistants Beryl Mosley, Barbara Hehner, Lori Gibbs, and Cindy Kirksen. (*Id.*) During the training, Barbara Mosley expressed concern regarding the Legal Assistants' work load. (Def. St. ¶ 11.) Legal Assistant Beryl Mosley responded that when she had too much work to do, she would advise their supervisor, Sharon Getty, and Getty would assist her. (Def. St. ¶ 11.)

About an hour after the training session, Johnson and Mosley had an exchange that led the instant lawsuit. Mosley asked Johnson what she thought of the training session, and Johnson responded as follows: "I told her she had gone on and on in the meeting about if we needed help that we could go to Sharon Getty that it made me want to throw up." (Def. St. ¶ 12.) In making that statement, Johnson meant that the Legal Assistants needed a more permanent fix to their staffing issues. (Def. St. ¶ 13.) Mosley was upset by Johnson's comment. She felt that Johnson was calling her a "kiss-up." (Def. St. ¶ 16.) Mosley later confronted Johnson about her hurt feelings, and Johnson apologized. (Pl. St. ¶ 96.)

Although Mosley did not intend to make a formal complaint against Johnson, she spoke to her supervisor Sharon Getty's about the incident. (Def. St. ¶ 21.) Getty recalled that Mosley was crying, nervous, and visibly upset. (*Id.*) Getty then told her supervisor, Nicholas Guzzi what Mosley told her and also called Mosley into Guzzi's office so Mosley could recount the story herself. (Def. St. ¶ 25.) Guzzi then told his supervisor, Robert O'Toole, about the situation, and the two jointly decided to temporarily reassign, or "detail," Johnson to a new task in a different location of the office.

On June 14, 2011 Robert O'Toole informed Johnson that she was being reassigned to work in the file room on the 11th floor, where she would be responsible for

indexing closed files so that they could be moved to an offsite storage facility. (Pl. St. ¶ 110-111.) As a component of her detail to the 11th floor file room, Johnson was told that she was permitted to visit the office's 3rd, 4th, and 5th floors only for business reasons and with prior approval from her supervisors. (Def. St. ¶ 53.) She was also told that she was not allowed to have visitors in the 11th floor file room because it was a secured area. (Def. St. ¶ 32, 53.) Johnson was upset by the reassignment. She enjoyed working with the assistant U.S. attorneys on her floor, and feared that reassignment to the 11th floor file room would be isolating. (Def. St. Ex. 5 at 38.)

Johnson's detail as a "Records Control Technician" was supposed to last from June 14, 2007 to October 11, 2007. The parties dispute whether Johnson was informed that her detail was temporary, rather than indefinite. (Pl. St. ¶ 111, Def. St. ¶ 33.) The reassignment had no impact on Johnson's pay grade or benefits. (Def. St. ¶ 55, 57.)

Some weeks after the detail began, qualified employees were offered the opportunity to apply for an early retirement that would include a $25,000 "incentive payment" to accepted applicants. (Def. St. ¶ 57.) On July 9, 2007, Johnson applied for retirement under that program, and her application was granted. (Def. St. ¶ 57-58.) Her retirement became effective on September 1, 2007.

Johnson alleges that her employer unlawfully discriminated against her on the basis of her race, sex, and age when they reassigned her to the 11th floor file room.

## II. Standard of Review

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

3

Civ. P. 56(c). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Id.* Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

**III. Analysis**

The Court finds that Defendant is entitled to summary judgment on Johnson's claims for race, sex, and age discrimination. Both parties have argued at great length about whether Johnson's comment to Mosley warranted her reassignment to the 11th Floor file room, but that is of little relevance to the Court. Even if the reassignment was an adverse employment action, Johnson must provide some evidence that the reassignment was the product of discriminatory animus. Johnson has failed to do so.

An employee claiming discrimination in violation of Title VII may prove her claim by one of two methods, commonly known as the direct and indirect methods. *Silverman v. Bd. of Educ.*, 637 F.3d 729, 733 (7th Cir. 2011). Under the direct method, "the plaintiff must produce sufficient evidence, either direct or circumstantial, to create a triable question of intentional discrimination in the employer's decision." *Id.*

Johnson seems to concede that she has no direct evidence of discriminatory intent, but claims that she should prevail under the direct method nonetheless because there is a convincing "mosaic" of circumstantial evidence. *See* Doc. # 44 at 10 (citing *Sylvester v. SOS Children's Vill. Illinois, Inc.,* 453 F.3d 900, 905 (7th Cir. 2006).) The Court disagrees. The Seventh Circuit, in *Silverman,* identified tree types of circumstantial evidence that could satisfy the direct method of proof: (1) "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees [of plaintiff's race or national origin]"; (2) "evidence showing that the employer systematically treated other, similarly situated ... employees [of a different race or national origin] better;" and (3) "evidence that the plaintiff suffered an adverse employment action and that the employer's justification is pretextual." *Silverman,* 637 F.3d at 734 (internal quotations omitted). As discussed below, Johnson fails to satisfy any of those categories.

First, Johnson presents no evidence of prejudiced remarks or behavior on the part of her supervisors. Thus, she fails to raise an inference of discriminatory intent under the first category of circumstantial evidence.

Regarding the second category, Johnson makes a conclusory argument that the U.S. Attorney's Office treated similarly situated employees outside her protected statuses more favorably, but provides no factual support for that argument. It is not enough for Johnson to simply conclude that she was "treated differently than co-workers who had in-office differences of opinion." She must point to some scintilla of evidence in the record supporting that contention. *Keri v. Bd. of Trustees of Purdue Univ.,* 458 F.3d 620, 628 (7th Cir. 2006) (conclusory allegations are insufficient to defeat a motion for summary

judgment). Johnson has failed to do that. After its own exhaustive search of the record, the Court came upon some reference to disparate treatment of coworkers in Johnson's interrogatory responses, which Defendant filed as an exhibit to his summary judgment materials. Those interrogatory responses cannot create a genuine issue of material fact, however, because a party cannot use his own interrogatory answers to support or oppose summary judgment. *Luster v. Illinois Dep't of Corr.*, 652 F.3d (7th Cir. 2011). The Court also notes that, while the responses list a number of employees who Johnson claims were treated more favorably than her, they say nothing about whether those employees were similarly situated.

As to the third type of circumstantial evidence—evidence that the employer's justification is pretextual—the Court finds that Johnson fails there too. Johnson cites some factual support for the notion that her reassignment was a disproportionate response to her "makes me want to throw up" comment, but that alone cannot support an inference of discriminatory intent. *Fane v. Locke Reynolds*, 480 F.3d 534 (7th Cir. 2007) (plaintiff's claim that her employer overreacted to her behavior dies not, alone, demonstrate pretext). Thus, Johnson cannot survive summary judgment under the direct method.

Johnson also makes a passing argument, without any citation to the record, that her claims should survive summary judgment under the indirect method of proof as well. Under that method, Johnson must first establish a prime facie case of race and/or gender discrimination by proving that (1) she was a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) the employer treated a similarly situated employee outside

the class more favorably. *Hancock v. Potter,* 531 F.3d 474, 478 (7th Cir 2008) (gender discrimination); *Winsley v. Cook County,* 563 F.3d 598, 604 (7th Cir. 2009) (race discrimination). Similarly, to establish a prime facie case of age discrimination, Johnson must produce evidence that she (1) was over 40 years old; (2) was meeting the defendant's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than younger, similarly situated employees. *Griffin v. Potter,* 356 F.3d 824, 828 (7th Cir. 2004).

As discussed above, Johnson has failed to develop any factual support for the "similarly situated" element. There is simply no evidence from which a reasonable jury could conclude that similarly situated coworkers outside of Johnson's protected classes were treated more favorably. Accordingly, Johnson cannot establish a prime facie case of race, gender, or age discrimination, and her claims cannot survive Defendant's summary judgment motion under the indirect method.

## CONCLUSION

For the above reasons, the Court GRANTS Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

_____
Dated 2/27/12

_____
Hon. William J. Hibbler
United States District Court